May it please the court. My name is Kevin Mukhtari of O'Melveny & Myers and I represent Patricia Audrey Peters. In order to fully understand this case, it's critical to understand a very brief introduction to Ms. Peters. Ms. Peters is a H-1B visa. She didn't come here through kind-assigned means. She has committed no criminal act that puts her before this tribunal. Instead, she is a professional, a skilled worker who has come here from the U.K. and is actually here on an H-1B visa. She pays substantial taxes. She works for a venture capital firm. And frankly, if the economy is to turn around, it's people like Ms. Peters who are going to bring capital to this country and create new jobs. Well, I think we know the background. And frankly, one of the questions I had that I wanted to ask of both of you is, I mean, we do a lot of immigration cases and a lot of people have serious felonies. They have, you know, there's all sorts of, they've come illegally. There's any number of things. And she is a little bit different. Why do you think that in some of these cases we end up mediating or any number of things, why do you think that the government is so intent on removing your client? That's a good question, because they waited until after the district court decision to initiate removal proceedings. There's a number of reasons, but frankly, I don't really know why they're so intent on her. There haven't been any mediation efforts? There were initially mediation efforts, but those fell through when the litigation council from the government side was changed. So, I mean, I think this case is. Was that Ninth Circuit mediation or? This was in the district court, Your Honor. Oh, so, okay. All right. I'm sorry. I was just curious about that, because it does seem to be a little bit of a different case than we usually see. I agree, Your Honor. The only thing standing before Ms. Peters are the two issues of this case. One, jurisdictional question, which is important. And two, the substantive question, which we reach only if the jurisdiction question is answered. But she is in removal proceedings now, correct? She is. And in defense of those removal proceedings, she has requested adjustment of status, which the immigration judge has empowered to grant. She has, Your Honor. And if for some reason the immigration judge denies relief, she can petition the Board of Immigration Appeals. And if she still loses, she can then petition our court, just like any other removal case, right? Those are all true, Your Honor. So, why do we have jurisdiction to hear this case now if we don't have a final order of removal pending against her? The reason that this court has jurisdiction is because, unlike Your Honor's opinion in Cabachan, this case has a different procedural posture. There, the district court ruled while there were simultaneous pending removal proceedings. And so it did not have jurisdiction at the time it ruled. Here, the district court ruled while there were no removal proceedings pending. The removal proceedings were initiated after the judgment was entered. That's an important distinction because now the Ninth Circuit has jurisdiction under 28 U.S.C. 1291 to review the final order of the district court. Well, that's the question, though, because the problem is that the district court's order cannot grant her any effective relief at this point because of the fact that she's in removal proceedings. So, I'm not sure that the distinction you're trying to draw from Cabachan holds. Well, the important thing that I believe is she's asking for declaratory relief that she falls within this no fault or technical reasons exception. And the district courts found that she did not. Well, the district court found under an APA review that U.S. Citizenship and Immigration Services' decision was not arbitrary and capricious. You have a much more favorable standard of review in removal proceedings, do you not, if substantial evidence does not support whatever the decision is by the immigration judge? It is more favorable, but the question really is why? The government doesn't cite a single case saying that. It creates an odd situation. The district court ruled, and at no point, and it had, we all agree, the government concedes that there was proper jurisdiction at that time. Then it initiated removal proceedings. So only then did the Cabachan rule come into play with divesting it of jurisdiction. Although she does have a better standard before the removal proceedings, nevertheless, the issue before this court is whether or not the district court erred in making its ruling. Well, I'm not sure you want us to go there, because if the standard is arbitrary and capricious, a less favorable standard, I'm not giving you an advisory opinion here, but I'm just pointing out the differences in standard of review. Be careful what you ask for, because if you get a decision from us, if we do decide that we have jurisdiction, you could end up with an affirmance of the district court's decision. But then I think your answer is, well, that's well and good, thank you very much, 9th Circuit, but I also have a pending removal proceeding now, and I can continue to litigate whether or not she's entitled to an H-1B visa in that proceeding. So doesn't that render the judgment that you got from the district court effectively irrelevant, because it doesn't really afford any relief? I agree with Your Honor's sentiment. I think when we looked at this case, we thought that the worst scenario would be, as Your Honor pointed out, that this court affirm the district court. We completely agree with that. But what's the effect of that decision? I guess what I'm struggling with is a question of whether or not the district court's judgment, which purported to be a final judgment, is effectively moved, given the pendency of the removal proceedings where she can seek and obtain the same relief that she sought from the district court. Well, we know that the immigration judge that she's before has been punting, essentially, waiting on the 9th Circuit, and has now this district court order, a final judgment from the district court. It may be moved in realistic, in pragmatics. It's not binding on the immigration judge, is it? No, it's not binding, but nevertheless. Is the government arguing? Let's say if we were to affirm, would the government argue that this would be somehow law of the case and so therefore she wouldn't be entitled to? They haven't argued that, but it's not the same case, is it? I mean, we've got a civil action under the Administrative Procedures Act entitled Peters v. Napolitano that you're here on. There is also a pending administrative law proceeding entitled Holder v. Peters, in which she is seeking on a different side of the DHS house, I guess the immigration and customs enforcement side, relief from a pending removal hearing, which was initiated by a notice to appear. So I think I'm not sure how you could say it's law of the case if it's not the same case. Right. Well, particularly if the standards of review are different. I mean, that would be like saying if you lose in a criminal case, the government can't come after you civilly and re-litigate the same issue, but the burden of proof is, beyond a reasonable doubt, versus preponderance. Of course. I think what a big issue is is that with that district court order looming, the immigration judge will inevitably look at that order, and that's part of the problem why we distinguish ourselves from cavalcade. But how is the district court's decision even relevant to what the immigration judge is doing? The district court's decision is that Citizenship and Immigration Services did not abuse its, I shouldn't say not abuse its discretion, did not act in an arbitrary and capricious fashion when they refused to adjust her status because she stayed longer than 180 days. The only issue that the immigration judge is being asked to decide is whether or not she is currently here without lawful status and therefore subject to being removed. Right. And she's saying, well, I have a defense to that. I'd like to apply for an adjustment of status and restore my visa. And as I understand it, he has the power to do that if he wants to. Right, but nevertheless has not acted for some period of time. Right. If we said that you're, I understand you to say ordering, that you're first asking the court to find jurisdiction and reverse the district court, but if that didn't occur to dismiss for lack of jurisdiction, and your last, what you would consider to be the death knell, or the worst for your case would be to affirm the, find jurisdiction and affirm the district court. Yes, Your Honor. That's. It's sort of an odd posture to be in front of the court. Right. Well, I mean, responding to Judge Tallman's questioning about the different standards, I think ultimately in being realistic and being frank with the court, the worst thing that would happen is that we affirm that district court. So we agree that ultimately it should be a matter of, our position has been from the beginning in the briefing that the district court had jurisdiction, this court has jurisdiction per 1291, and that the district court erred because they. The district court was, didn't, was arbitrary and capricious, I guess. Well, yeah, but the district, the agency. The agency was in the review. The agency, exactly. Yeah, the agency was in it. Well, you say that's your position, but you also don't want to lose, because the worst case is to get to this court, have jurisdiction, and have us affirm. So what is it you're really asking for us to do? I mean, you really, the ideal world you might have the option of either I win or the case goes away. Right. A no lose, but it doesn't really work that way. What is it you want us to do with this case? Dismiss it for lack of jurisdiction or affirm or reverse? Okay, you don't want affirm. That's the worst case. So you've got two options. Reverse with the risk of an affirm, dismiss for want of jurisdiction. Well, I think ideally because of the different standard we would dismiss, and that would be the safer bet. She's not harmed in any way if we do that, because she can still seek the same relief with a more favorable standard of proof before the immigration judge. That's true. The one scenario we didn't talk with you about was what happens if we reverse the district court? What would be the effect of a reversal of the district court's decision? That I've thought through in terms of we briefed about the Ruiz-Vidal, that this court has all the facts in front of it. The facts have essentially decided we're not going to go back and change any of those things that happened in 2006, 2007. And having had all that and the fact that the USCIS has already twice already ruled on it, one time initially and then a motion for reconsideration, this court could issue judgment as a matter of law. So direct the Department of Homeland Security, USCIS, to adjust your staffs? Yes. Do you have any precedent for that? Yeah. I mean, there's a Supreme Court case that I think stands right in your path called INS versus Ventura. Right. Well, the specific thing that we want is to send it back with instructions that she falls within the no fault or technical reasons exception. Right. Not to then once that automatic bar is lifted, then them to analyze. Isn't that a factual determination that the agency made? In other words, it's dependent on a finding. I guess the problem was she couldn't prove when or if her attorney, I assume it's her former attorney now, refiled the necessary paperwork. Is that right? And so the agency said, well, you must have stayed out of status longer than six months. Right. And naturally, it is a factual determination. I'm not going to rehash and relitigate the facts. But there were some. You're asking us to do that, are you not, if you want us to direct the agency to adjust status? You're asking us to overturn that factual determination and direct the agency to nonetheless adjust status. Not quite, because I think what we're asking for specifically is not to relook at those facts, but to simply say that those facts are enough to put her, they never analyzed whether or not those facts constituted the no fault or technical reasons exception. That's the, that's. So we would declare that as a matter of equity, she should be deemed to have been out of status less than six months? In essence, yeah. Or that the agency erred in refusing to accept the application because it was on an outdated form? That's the technical part. Sort of see that it sounds like we're making this up as we go along. Yeah. Without any law to support it other than, you know, the equities seem to be strong in terms of whether Ms. Peters should ultimately be afforded relief. The question is, who do you make the pitch to? And you've got an ear, you've got an immigration judge, you've got a forum in which to make all these good arguments as a defense to removal. And if you don't like the justice you get there, you can come back here. Well, why don't we hear from the government? Let's see whether or not your opponent can help us, enlighten us on these interesting little questions. Good morning, Your Honors. Good morning. My name is Patricia Bruckner, and I represent Appellee Secretary Napolitano. Appellee has two major points to make this morning. First, we ask the court to vacate the district court judgment with instructions to dismiss the case for lack of subject matter jurisdiction. Secondly, if the court finds it has jurisdiction, we ask the court to affirm the district court finding that USCIS had substantial evidence in denying Ms. Peters' adjustment application. Perhaps you can address the question Judge Callahan raised earlier, which is, why are we here? I mean, we've all been doing immigration cases for over ten years. And I mean, so many people, you know, it's almost like we probably can't count the number of affirmances that we've done in cases, and people, not that the government ever removes people, but in terms of that we actually do that. And this, why are you so intent on removing this woman in that probably of all the people I've seen in ten years, she seems to be the least culpable and the most productive? You make a very good point, Your Honor. The government is not intent on removing Ms. Peters, quite the contrary. This litigation So why didn't you mediate this case and grant her the relief that she was asking? There was mediation. It was in the Ninth Circuit, and I was the government's attorney at that time. Ms. Peters' attorney brought up a strange issue about a phantom filing in the district court, and we knew that removal proceedings were ongoing, and the agency counsel could find no basis to grant adjustment to Ms. Peters. Let me suggest one to you. Why can't the agency treat the original application, even though it was on an outdated form, as if it were a valid application for adjustment of status? Sort of a nunk-pro-tunk solution. That then solves the problem that she was out of status for more than six months, and presumably you could then extend her H-1B visa, could you not? If the agency in its discretion granted a nunk-pro-tunk application, that's correct, Your Honor. No nunk-pro-tunk application has been made by Ms. Peters. We're talking mediation here, counsel. As Judge Clifton said, we're making this up as we go along, but what's wrong with my proposal? And I'm not trying to mediate the case on behalf of Ms. Peters. But it's sort of the type of thing, you know, if you're on Fox News when you don't remove someone and it's a drunk driver that kills, you know, it's a citizen that, you know, we boarded removal when they're not gone, and then they kill someone, I don't think you'd be on Fox News for letting Ms. Peters stay. You probably won't make the news at all, but you'll go home and sleep better at night. You know, I can tell you a lot of these cases are very difficult. Well, what's difficult about this one other than the fact that the agency thinks that she didn't file it on the right form? Because Ms. Peters didn't meet the eligibility requirements. I can tell you I also handled the Ali Muradi case in the District of California that an appellant raised. And in that case, the government attempted, actually denied an adjustment application for Mr. Ali Muradi, who was an earthquake engineer in Southern California. And the same agency counsel in both cases, you know, her position, and it's a valid one, is that we have to treat all applicants the same. It doesn't matter if they're an earthquake engineer or a marketing expert. Had he tried to file for an extension of status on an outdated form, or had he somehow just missed the filing deadline? His attorney late filed in that case. Late filed. This case seems like a triumph of bureaucracy over reality, because just recently the government's hit upon the proposition that the problem wasn't an outdated form. I've got to say, I understand that reading, but it's not how I looked at the documents. Everybody appeared to assume that the problem was an outdated form, which in fact was not outdated under the regulations. So why exactly is that application not a valid application? You told me that there's something missing, that she's not eligible. Why is she not eligible? And I hope there's a reason that's substantive other than paperwork. The application type was changed in 2005, and the I-129 form had to include an H supplement and an H-1B supplement. And the H-1B supplement had questions, which led the agency to a determination whether it was a nonprofit and was exempt from a filing fee. So the fees were dependent on an H-1B supplement, which was not included. And so when the contractor received the application, it was appropriately rejected because the company didn't follow the filing instructions. So this whole case turns on the failure to file a filing fee? Actually, the petitions are returned. So we do not know exactly. What's the filing fee? The filing fee at the time, there was a base fee of $185. Then if the company is not a nonprofit and that's determined by the supplement, there's a fee of either $750 or $1,500. $750 if your company has fewer than 25 full-time employees. I'm assuming Impact Capital has more than that. And then there's a mandatory $500. Maybe the fee would have covered your travel expenses to come out here to argue this case. I had a lot of trouble understanding the logic behind why we're here. I understand, Your Honor. And then the $500 fraud prevention fee is mandatory. Now, there are checks in the record that I believe were submitted with the first petition, one for $940 and one for $500. So now we're talking about a $600 difference? Well, the $500 fee was correct, but the $940, none of the possibilities add up to $940. It should have been $185 plus either $750 or $1,500. So if they had fewer than 25 employees and were supposed to pay $750, it would have been $935. Wow. So this really is like a nightmare of bureaucracy. If she won, could she ask for attorney's fees under each? Granted. She could ask for them, but the government's position is substantially justified. And you get a sense with a panel which isn't the least friendly panel you could have from this court, you've got a strong wind in your face. Might this be a case that's worth returning to mediation? Your Honor, I can't pursue that with the client. Why don't you do that? Why don't we hold this case in abeyance for about 60 days to give you a chance to take another run at it and then give us a status report at the end of 60 days? But they record oral argument. Yeah. And so your boss could listen to oral argument and get a sense of what the court, that the court's asking questions about the type of questions the court's asking. And you can even tell them who's on the panel, and they can even look at how often we grant petitions or as far as things go that way. I mean, I think we've all expressed our individual concern about whether the government's position is substantially justified here. So if you speak to Blanca, she'll get you a copy of the DVD of the argument, and you can take that back to your client and say, here, listen to this. It's on our website. The whole world will be able to hear this soon. There you go. That's right. All right? Thank you, Your Honor. Okay, Ms. Peters. Or excuse me, not Ms. Peters, that's Ms. Bruckner. All right. We'll take this case under, I think we'll issue an order to take care of the paperwork, but I think what we'll do is vacate submission and hold it for 60 days in advance, get a status report from the parties. In the meantime, counsel, if you would contact the Ninth Circuit Mediation Office and arrange and then talk to your opposing counsel about a mutually convenient date after you've talked to your client, that would be great. Sure we have. Okay. Thank you both. Thank you.
judges: Tallman, Clifton, Callahan